## M. H. BOUTELLE *vs.* MINNEAPOLIS CITY.

Argued Nov. 26, 1894.   Affirmed Dec. 28, 1894.

No. 8841.

**Minneapolis city charter construed as to taking land for streets.**

Under the charter of the city of Minneapolis (Sp. Laws 1881, ch. 76, subch. 10), when no appeal has been taken from an order of the city council confirming an award of damages for taking private property for public use, the title to such property vests absolutely in the city for all purposes when the city council appropriates and sets apart in the city treasury the amount of such award. And such appropriation and setting apart operate to divest and release the lien of a mortgage then existing on the property so taken.

**The award is security for debt secured by mortgage on the real estate taken.**

The amount so appropriated and set apart becomes collateral security for the payment of the mortgage debt, and may be so applied.

**If the mortgage debt be otherwise paid the award is released.**

If, however, the mortgagee resorts to such real estate as remains unaffected by the condemnation proceedings, and thereby, through a foreclosure, satisfies the debt secured, with all costs and charges, his lien upon the amount of the award is terminated.

Appeal by defendant, the City of Minneapolis, from an order of the Municipal Court of that City, *Stephen Mahoney*, J., made March 20, 1894, denying its motion for a new trial.

Fred H. Boardman owned lots one (1) and two (2) in Central Park Addition to Minneapolis, fronting on Hennepin avenue. On May 14, 1889, he and wife mortgaged them to Sarah I. Hawley to secure his notes held by her for $8,500 due three years from that date with interest. The city authorities commenced proceedings May 27, 1891, to widen Hennepin avenue and on June 26, 1891, condemned and took for that purpose three feet in width off the front of his lots and awarded to him $300 damages. No damages were awarded to the mortgagee. The award was confirmed and on October 28, 1892, a warrant for the amount was issued to

Boardman. He afterwards presented it for payment, but it was not paid and on December 1, 1893, he sold and assigned it to plaintiff.

Mrs. Hawley foreclosed her mortgage under a power therein and on December 5, 1892, the lots were sold by the sheriff to pay the debt secured. She bid them in for $9,143.32, the full amount due on the notes with interest and costs of foreclosure. She received a certificate of sale. No redemption was made. She took possession of the property and claimed also to be entitled to the $300 awarded to Boardman. The plaintiff commenced this action January 8, 1894, against the city to recover this money. He obtained findings and direction for judgment for the amount. Defendant moved for a new trial, but was refused and it appeals.

*David F. Simpson,* and *L. A. Dunn,* for appellant.

The city does not deny its legal liability to pay the award of $300 for taking three front feet of the lots, but it does deny the right of the mortgagor or his assignee to receive it. Both in reason and justice the award belongs to Mrs. Hawley. Her security was diminished, not by any act of the mortgagor, but by the paramount authority of the state, presumably against her wishes. Her right to the award was a fixed legal right under the constitution and she was entitled thereto as a condition precedent to the authority of the state to take and occupy the land.

When the mortgaged property was turned into money or a claim for money by the taking of it for public uses, under authority of law, her rights remained unaltered and she became entitled to have the money applied, in place of the land, to the payment of her claim. *Brown* v. *Stewart,* 1 Md. Ch. 87; *Platt* v. *Bright,* 31 N. J. Eq. 81; *Moritz* v. *City of St. Paul,* 52 Minn. 409; *South Park Com'rs* v. *Todd,* 112 Ill. 379; *Sherwood* v. *Lafayette,* 109 Ind. 411; *Philadelphia W. & B. R. Co.* v. *Williams,* 54 Pa. St. 103; *Markey* v. *Langley,* 92 U. S. 142.

Her claim was not extinguished by the foreclosure of the mortgage. On the sale she bid in the whole of the lots, not merely the part that remained after the condemnation proceedings. If the city now is to hold three feet in width of what she purchased

she should have the price of it, viz. the $300 in question. *Adams* v. *Corriston*, 7 Minn. 456; *Burke* v. *Lacock*, 41 Minn. 250; *Engelhardt* v. *City of Brooklyn*, 3 Misc. (N. Y.) 30; *Bank of Auburn* v. *Roberts*, 44 N. Y. 192; *In re Eleventh Avenue*, 81 N. Y. 436; *Utter* v. *Richmond*, 112 N. Y. 610.

*Boardman & Boutelle*, for respondent.

When mortgaged lands are taken under the exercise of the right of eminent domain by proceedings binding upon mortgagor and mortgagee alike, the interests of both in the land are annulled. The land condemned is thus released from the lien of the mortgage. In equity, however, the award is treated as a substitute for the land, and the mortgagee is held to have a lien thereon, which the courts will protect to the extent of the debt. When mortgaged lands are only in part condemned, the mortgagee becomes possessed of two funds, the award and the remaining land, to either or both of which she may have recourse until the debt is satisfied and no further. If she pursues and obtains the award and it is equal to or exceeds her debt, then the debt is paid and the remaining land is released. If, instead of pursuing the fund, she first proceeds against the land and realizes therefrom the full amount of the debt, her claim to the award is extinguished.

After a part of the land is taken by condemnation proceedings, to which she is a party, that part is released. It is not sold by the foreclosure sale. Whether the mortgagee or a stranger bids in the land at the mortgage sale the legal effect is the same. The purchaser takes only what remains after the authorities have taken what is required for public use. Mrs. Hawley should have applied for and obtained the award by the aid if necessary of the courts and have foreclosed her mortgage afterwards for the residue of the debt. Instead of thus proceeding she resorted to the land first and bid the full amount of her claim. The foreclosure thus satisfied the debt and extinguished her claim to the award. *Utter* v. *Richmond*, 112 N. Y. 610; *Shafer* v. *Shafer*, 75 Ia. 349; *North Hudson R. Co.* v. *Booraem*, 28 N. J. Eq. 593; *Gray* v. *Case*, 51 N. J. Eq. 426; *Calumet River Ry. Co.* v. *Brown*, 136 Ill. 322; *Devlin* v. *Mayor*, 131 N. Y. 123; *South Park Com'rs* v. *Todd*, 112 Ill. 379.

The foreclosure involved simply the lands remaining. These the purchaser bought and to these only she acquired title on the expiration of the period of redemption. *King* v. *Mayor*, 102 N. Y. 171.

COLLINS, J. Although counsel have made much of this appeal in briefs and by oral argument, a statement of the undisputed controlling facts will show it to be an exceedingly simple case. May 11, 1889, Fred. H. Boardman, owner of two lots in the city of Minneapolis, mortgaged them to one Sarah I. Hawley. Later the city authorities duly initiated and carried on proceedings in the manner prescribed by the charter to widen the street on which these lots abutted, a strip along their front three feet wide being required. June 26, 1891, the commissioners duly appointed to appraise the damages for such taking made a report and award, whereby there was awarded to said Boardman as damages to the lots the sum of $300. This report and award was duly confirmed on July 24, 1891, and the same and the said confirmation have never been vacated, set aside, or modified, and none of the condemnation proceedings have ever been annulled or vacated. In the fall of 1892 the city took possession of that part of the premises condemned and appropriated as aforesaid for public use, and has ever since occupied the same as a street or highway. October 28th of the same year a warrant for the amount so ascertained and awarded as damages was duly drawn by the city authorities, payable to Boardman. Afterwards payment of the amount was demanded by him, and refused, and then the claim was assigned to plaintiff.

Default having been made in the condition found in the mortgage, it was foreclosed by a sale under the power December 5, 1892. The property as described in the mortgage was purchased at the sale by the mortgagee for the full sum due, with all costs and charges. A sheriff's certificate of sale was duly made and recorded, and no redemption was made from the sale within the time prescribed for such redemption. The object of this action was to recover the amount awarded.

By reference to the charter provisions (Sp. Laws 1881, ch. 76, subch. 10) it will be seen that the mortgagee was as much a party thereto, and was bound thereby to the same extent, as the mortgagor owner. No appeal having been taken from the order of confirmation made in

July, 1891, by the city council, the proceedings were final, and conclusive on all interested parties. It will also been seen that on appropriating and setting apart in the city treasury the amount of the award the city became vested absolutely with the title to the property taken and condemned for any and all purposes, and was authorized to enter upon and take possession of it. The city council appropriated and set apart the money in the city treasury October 28, 1891, when it caused a warrant to be drawn for the amount of the award. It follows that at that time the property taken was divested and released from the lien of the mortgage, and the mortgagee had no further claim upon it; the title had vested absolutely in the city, and it was entitled to and did take possession.

Undoubtedly, the money so appropriated and set apart became collateral security for the payment of the mortgage debt, substituted in lieu of the land taken, and it so remained until the foreclosure sale, December 5, 1892, when the property thus covered by the mortgage was sold for the full amount due, with costs and expenses; and the debt was thereby extinguished. Up to this time the mortgagee had two funds for the security of her debt, the amount of the warrant and the real estate on which the mortgage remained a lien. Resort could have been had to either fund, and if from either she realized her debt a lien upon the other terminated. That at the foreclosure sale the premises were sold, and that in the sheriff's certificate they were described as in the mortgage, is of no consequence, for a part had been as effectually released, by operation of law, as if a partial release had been formally executed and delivered.

Order affirmed.

(Opinion published 61 N. W. 554.)